UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.:  3:24-CR-16-TAV-DCP |
| | ) |
| MICHAEL CHARLES HOFFPOWIER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on September 23, 2024 [Doc. 41]. The R&R addresses defendant's motion to suppress [Doc. 30]. The government responded [Doc. 31], and Judge Poplin held a motion hearing on July 18, 2024 [Doc. 32]. Judge Poplin then issued the R&R [Doc. 41], recommending that the Court deny defendant's motion to suppress [Doc. 30].

Defendant filed objections to the R&R [Doc. 46], and the government responded [Doc. 47]. Accordingly, the matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 46], **ACCEPT** and **ADOPT** the R&R [Doc. 41] in whole, and **DENY** defendant's motion to suppress [Doc. 30].

## I. Background[1]

Defendant is charged with possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871 and 18 U.S.C. § 921(a)(3)(C) (Count One) [Doc. 15, p. 1]. He is also charged with stalking in violation of 18 U.S.C. § 2261(A)(Count Two) [*Id.* at 2].

The parties appeared before Judge Poplin for an evidentiary hearing on defendant's motion to suppress on July 18, 2024 [Doc. 32]. The government presented the testimony of Knox County Sheriff's Office ("KCSO") Detective Kelley Talbot and KCSO Deputy Ryan Collins. After considering the testimony and evidence presented, Judge Poplin made the following findings of fact (which the Court excerpts for relevant background):

> On February 12, 2024, B.H., a nurse at medical center in Farragut, Tennessee, contacted the KCSO to report that her estranged husband, Michael Hoffpowier, had made an online appointment with her for the following day using a false name . . . B.H. met with KCSO Detective Kelley Talbot at the Family Justice Center later that day. B.H. told Detective Talbot that she and her husband were separated and that she moved to Texas to get away from Defendant, but he came to her workplace in Texas unannounced in August 2023 and was asked to leave by police. B.H. also told Detective Talbot about a previous incident of harassment by Defendant in Pennsylvania in November 2023 in which police were called and she pressed charges. B.H. told Detective Talbot that she and Defendant had both signed divorce papers in January 2024, but she did not file them before moving to Tennessee. B.H. told Detective Talbot that she had repeatedly told Defendant that she did not want to see him. Detective Talbot made a safety plan for B.H. that involved B.H. calling Detective Talbot's cell phone and 9-1-1 if Defendant came to her workplace the next day. B.H.'s employer would also lock the doors until officers arrived . . .
> Officers Collins and Jeremiah Freeland responded to B.H.'s workplace, but neither B.H., nor Defendant were there . . .
> Detective Talbot received a second call from B.H., who advised that Defendant had passed her near Kroger . . . Detective Talbot relayed the

---

[1] The Court presumes familiarity with the facts and procedural posture of this case. The Court will adopt Judge Poplin's factual findings [Doc. 41, pp. 22–28], as the parties have not objected to this aspect of the R&R.

information that Defendant could be in the Kroger parking lot to Officer Collins Officers. Collins and Freeland drove to the Kroger parking lot, which was one-half mile from B.H.'s medical office. There, they saw Defendant's black Denali truck parked in the parking lot . . .

Officer Collins moved the patrol car to a nearby parking spot, while Officer Freeland searched Defendant and removed all items from his pockets, placing them on the cover to the truck bed. Officer Collins questioned Defendant about what he was doing in the Kroger parking lot. Defendant stated that he was writing a letter to his wife who was at work. Defendant denied doing anything wrong and denied the existence of an order of protection against him in another state. Defendant told Officer Collins that he and his wife had a toxic relationship and that they had each told the other not to contact him or her at various times. He said he only knew where his wife worked because she told him the address and that he had driven past her workplace but did not go inside. Defendant said he gave his wife the address where he was staying because she was meeting him but, instead, she had called the police.

Following this exchange, Officer Collins called Detective Talbot and told her that he had located Defendant, who said his wife wanted to meet him, there was no order of protection, and that they have a toxic relationship. He also told Detective Talbot that he had placed Defendant in handcuffs immediately because he was non-compliant and tried to leave. Detective Talbot told Officer Collins to advise Defendant of the Miranda warnings and then ask if Defendant had any proof that his wife asked him to come to Knoxville. She told Officer Collins that B.H. thought Defendant could be using a burner phone because he had texted her from two different phone numbers despite her previously blocking him . . .

Officer Collins called Detective Talbot a second time, and she told him she was obtaining an arrest warrant for Defendant for stalking. She also told him that Defendant had gone to his wife's workplace in Texas and the police were called to ask him to leave. After this conversation, Officer Collins questioned Defendant about the Texas incident. Defendant explained that he drove from Florida to Texas to deliver his wife's belongings to a storage unit, but while there, his truck broke down leaving him stranded. Defendant said he did not know anyone in the area, so he tried calling his wife, who did not answer his calls. Defendant said he then walked seven miles to his wife's work to ask her to take him to get parts for his truck . . .

Officer Collins reviewed the text messages between Defendant and B.H. and saw texts from B.H. telling Defendant to stay away from her and to go home. Officer Collins returned Defendant's cell phone to the dash of his truck and then informed Defendant that he was being taken into custody for stalking. When Defendant protested, Officer Collins told Defendant that "the

3

warrants have already been pulled." Defendant asked if he could contact B.H. to pick up his dog, which was in the truck. Officer Collins told him that law enforcement had already arranged for B.H. to pick up the dog, but Defendant would have to talk with the Sheriff's Office about getting his dog back because there was now an order of protection in place.

      In response to Officer Collins's question of what property Defendant wanted to take with him, Defendant asked for his cell phone, wallet, and keys. Defendant asked to roll up the windows on his truck. Officer Collins told Defendant that he would roll up the windows and secure the truck before Defendant was transported. He told Defendant the truck would not be towed. When Officer Collins opened the driver's side door, binoculars were visible on the center console. After Officer Collins rolled up the window and retrieved Defendant's cell phone, Defendant asked Officer Collins to get another set of keys from the console. While removing the keys from the console, Officer Collins saw a pistol magazine in the console. The officers asked Defendant if he had a gun in his truck, and Defendant denied having a gun.

      Officer Collins called Detective Talbot a third time to tell her that Defendant was being transported from the scene so B.H. could now come to the scene to pick up Defendant's dog. Detective Talbot asked if Defendant had shown Officer Collins any text messages. Officer Collins confirmed videoing texts in which B.H. told Defendant to stop talking to her. Officer Collins also told Detective Talbot about the binoculars and pistol magazine in Defendant's truck. Detective Talbot asked Officer Collins to photograph these items as evidence in the stalking case. She also asked him to confirm that no firearms were left in the vehicle. While talking to Detective Talbot, Officer Collins opened the center console and found what he believed to be a night vision monocular. At the end of the conversation, Detective Talbot said she would contact B.H. and get her to come to the Kroger.

      After ending his call to Detective Talbott, Officer Collins and another officer searched Defendant's truck. One officer found a handgun in the pocket behind the passenger seat. Officer Collins unzipped a leather overnight bag on the truck's backseat and found a second handgun with a silencer attached.

[Doc. 41, pp. 22–28].

Following the suppression hearing, defendant submitted a post-hearing brief [Doc. 35], to which the government responded [Doc. 36]. In support of his motion to suppress, defendant argued that officers violated his rights under the Fourth Amendment

4

because they lacked both probable cause and reasonable suspicion to detain and arrest him [Doc. 35, pp. 5–9]. The government argued in response that the officers had both reasonable suspicion and probable cause [Doc. 36, pp. 3–4]. Additionally, it argued that the Court could infer from the proof that B.H. felt harassed within the meaning of "emotional distress" set forth in Tennessee's stalking law [*Id*. at 5].

Judge Poplin then issued the R&R [Doc. 41], recommending that the Court deny defendant's motion [Doc. 30]. She concluded that the officers possessed reasonable suspicion to conduct an investigatory stop and to detain defendant outside of his truck [Doc. 41, p. 32]. She then determined that officers developed probable cause during their conversation with defendant and in light of text messages that Officer Collins reviewed [*Id.* at 37–38]. Finally, Judge Poplin concluded that the search of defendant's vehicle was lawful under the search incident to arrest exception to the warrant requirement [*Id.* at 39].

**II.     Standard of Review**

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the motion to suppress, the parties' underlying and supporting briefs, and their objections and responses to such objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those

5

Case 3:24-cr-00016-TAV-DCP    Document 49    Filed 11/14/24    Page 5 of 9    PageID #: 318

issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

**III. Analysis**

Defendant raises three objections to the R&R: (i) the finding that the officers had reasonable suspicion to justify his seizure outside his vehicle; (ii) the finding that the officers had probable cause "based on the victim's statement" to justify his arrest; and (iii) that the search of defendant's vehicle was lawfully based on suspicion of stalking [Doc. 46, pp. 1–2]. The government responds that the R&R correctly applied the law to each of these factual questions [Doc. 47].

**A. Reasonable Suspicion and Probable Cause**

Defendant submits identical arguments regarding reasonable suspicion and probable cause that he has already submitted to the Magistrate Judge in his post-hearing brief [*compare* Doc. 35, pp. 5–6, 8–9 *with* Doc. 46, pp. 2–4, 5–6]. Because defendant did not revise or update any of his argument in light of the R&R's extensive analysis of reasonable suspicion and probable cause, the Court cannot discern defendant's objection to Judge Poplin's analysis and recommendation, much less "how the [magistrate's] analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue." *Howard*, 932 F.2d at 509. As such, the Court need not consider these

6

two objections that were already submitted prior to Judge Poplin's R&R and fully considered and decided by Judge Poplin.

Defendant's first and second objections to the R&R are **DENIED**.

**B. Search of Vehicle**

Defendant objects to the validity of the vehicle search that led to officers' discovery of a firearm [Doc. 46, pp. 6–10]. Specifically, he appears to object to the R&R's finding that Officer Collins reasonably believed that other evidence of stalking would be in defendant's vehicle [*Id*. at 8]. Instead, defendant asserts that Officer Collins's "intention in searching the vehicle was only to find a firearm" [*Id*. at 8]. Because the officers lacked a reasonable belief regarding potential evidence, defendant argues that no exception to the warrant requirement set forth in *Arizona v. Gant*, 556 U.S. 332 (2009) applies, and the search was therefore violative of the Fourth Amendment [*Id*. at 7].

The government responds by focusing on the United States Court of Appeals for the Sixth Circuit's holding in *United States v. Williams*, No. 22-1365, 2023 WL 3815097, at *4 (6th Cir. June 5, 2023), which applied *Gant* to uphold the validity of a warrantless vehicle search based on indicia of the defendant's driving under the influence [Doc. 47, p. 2].[2] It argues that officers reasonably believed further evidence of defendant's stalking would be discovered in the vehicle because Officer Collins saw binoculars and an empty pistol magazine in plain view [*Id*. at 2]. Additionally, Detective Talbot testified that binoculars and weapons, among other things, commonly present evidence of stalking [*Id*.].

---

[2] Although defendant cites *Gant*, he does not discuss *Williams* in his brief [*see* Doc. 46].

7

Case 3:24-cr-00016-TAV-DCP   Document 49   Filed 11/14/24   Page 7 of 9   PageID #: 320

As Judge Poplin established in the R&R, *Williams* clarified how to determine reasonableness under the Fourth Amendment in this context [*See* Doc. 41, pp. 39–40]. To be valid, "[the] arrest must have been lawful (i.e., supported by probable cause and not otherwise unlawful), and (2) it must have been reasonable for the police to believe that evidence of [defendant's] crime of arrest would be found in his vehicle." *Williams*, 2023 WL 3815097, at *3. In determining that police possessed probable cause to search a vehicle pursuant to *Gant*'s second prong, the Sixth Circuit considered the original rationale for the traffic stop, the presence of evidence in plain view, and observations of the defendant during police interrogation. 2023 WL 3815097, at *3–4. Additionally, the *Williams* court noted that "even if the officers were solely driven by a desire to search [defendant's] vehicle and did not believe that they had probable cause or that probable cause could be obtained, their subjective intent is irrelevant to this inquiry." *Id*. at *4.

The Court finds that the R&R correctly applied *Williams* in determining that the officers in this case reasonably believed that evidence of defendant's crime of arrest would be found in his vehicle. *See* 2023 WL 3815097, at *3; [Doc. 41, p. 40]. As a preliminary matter, the R&R determined and the Court here affirms that the officers possessed probable cause to arrest defendant, satisfying the first prong [*see* Doc. 41, pp. 37–38]. As for the second prong, Officer Collins saw binoculars in plain view, which Detective Talbot testified would be evidence of stalking [Doc. 41, p. 39]. Given the basis for the investigative stop and defendant's statements to officers, had Officer Collins only observed binoculars in plain view, he arguably would have possessed an objectively reasonable basis

8

to search defendant's vehicle under the *Williams* rule. But he also saw an empty pistol magazine in plain view, which solidified his suspicion and justified this warrantless search of the vehicle. As for defendant's assertion that Officer Collins intended only to find a firearm, "subjective intent is irrelevant to this inquiry." *Williams*, 2023 WL 3815097, at *4. Put differently, courts have "flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification." *Id.* at *4 (quoting *Whren v. United States*, 517 U.S. 806, 812 (1996)). Regardless of Detective Talbot and Officer Collins's intent, they possessed an objectively reasonable belief that further evidence of defendant's crime of arrest would be discovered in the vehicle.

Therefore, defendant's third objection to the R&R is **DENIED**.

### IV. Conclusion

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Defendant's objections [Doc. 46] are **OVERRULED**. The Court **ACCEPTS in whole** the R&R [Doc. 41] and incorporates it into this Memorandum Opinion and Order. The Court hereby **DENIES** defendant's motion to suppress [Doc. 30].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
