UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:24-CR-16-TAV-DCP |
| | ) | |
| MICHAEL C. HOFFPOWIER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Michael Hoffpowier's Motion to A[]mend Order of Detention [Doc. 54], which was referred to the undersigned on December 30, 2024 [Doc. 61]. Following a detention hearing on February 23, 2024, Defendant was detained pending further proceedings in this case [Doc. 22]. The undersigned found by clear and convincing evidence that Defendant is a danger to the community and that no conditions or combination of conditions will mitigate that danger and reasonably assure the safety of the community [*Id*. at 2; Doc. 22-1 p. 3]. Defendant did not appeal the detention order following its entry.[1] On December 10, 2024, Defendant entered a change of plea to possession of an unregistered silencer and now asks to be released on conditions pending his sentencing hearing arguing that the original detention order was based on erroneous information and that he needs time to get his financial and legal affairs in order before serving his sentence [Doc. 54 pp. 1–3]. The Government opposes release asserting that

---

[1] Local Rule 72.4(b) provides in pertinent part that "[a]ny appeal from a magistrate judge's order on a nondispositive motion in a felony criminal case shall be taken within 14 days of service of the order." Defendant did not appeal the Order of Detention to the District Judge within fourteen days of its entry.

Defendant remains a flight risk and a danger to the safety of his estranged wife and the community [Doc. 59 p. 1].

After review of the record and the parties' arguments, the undersigned finds that Defendant fails to show by clear and convincing evidence that he is neither a flight risk nor a danger. *See* 18 U.S.C. § 3143(a). Additionally, Defendant has not shown clear evidence of a compelling reason for his release pending his sentencing hearing. *See* 18 U.S.C. § 3145(c). Accordingly, for the reasons discussed herein, the undersigned recommends that Defendant remain detained.

I.  **PROCEDURAL POSTURE AND APPLICABLE LAW**

On February 21, 2024, the Grand Jury charged Defendant with possession of an unregistered silencer on February 13, 2024 (Count One) and stalking of "B.H." across state lines from March 2023 through February 13, 2024 (Count Two). B.H., the victim of the alleged stalking count, is Defendant's estranged wife [*See* Doc. 41, Report and Recommendation, pp. 4, 22]. Defendant appeared before the undersigned for a detention hearing on February 23, 2024. The Government relied on a proffer and the Amended Pretrial Services Report ("APSR") prepared by the United States Probation Office. Defendant presented the testimony of his mother and proposed third-party custodian Sharon Smith and his girlfriend Trinity Young. The Court found by clear and convincing evidence that Defendant is a danger to the community, particularly to B.H., and "that no condition or set of conditions of release will mitigate that danger and reasonably assure the safety of the community" [Doc. 22-1 p. 3]. Moreover, based upon Defendant's alleged conduct forming the basis for the charges, the Court found it "ha[d] no confidence that Defendant would abide by conditions the Court might impose" [*Id.*]. Accordingly, the undersigned ordered that Defendant be detained pending trial [*Id.*; Doc. 22 p. 3].

The parties entered into a plea agreement providing that Defendant would enter a plea of guilty to possession of an unregistered silencer, and the Government would move for dismissal of the stalking charge at the sentencing hearing [Doc. 52 p. 1]. Under the plea agreement, Defendant retains the right to appeal the denial of his suppression motion, and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties "agree that a sentence of no more than eighteen (18) months' imprisonment followed by a lawful term of supervised release is the appropriate disposition of this case" [*Id*. at 1, 3]. Defendant entered a plea of guilty to possession of an unregistered silencer on December 10, 2024, before United States District Judge Thomas W. Phillips [Doc. 55, Minutes]. Judge Phillips ordered that Defendant remain in custody pending his sentencing hearing on April 10, 2025, before United States District Judge Thomas A. Varlan [*Id*.].

Defendant seeks release [Doc. 54 p. 1] pursuant to 18 U.S.C. § 3145(b), which provides that a defendant ordered detained by a magistrate judge may move the district judge for "revocation or amendment of the order." Defendant asks the Court "to amend" the detention order to permit his release [*Id*.]. Initially, the Court questions the timeliness[2] of Defendant's motion pursuant to § 3145(b) because Local Rule 72.4(b) provides in pertinent part that "[a]ny appeal from a magistrate judge's order on a nondispositive motion in a felony criminal case shall be taken within 14 days of service of the order." E.D. Tenn. L.R. 72.4(b). *But see United States v. Hoilman*, No.

---

[2] Defendant implies that the messages obtained from his cellphone showing that his estranged wife invited him to visit her and the anticipated dismissal of the stalking charge is new information not known at the time of the detention hearing [Doc. 54 pp. 1–2]. *See* 18 U.S.C. § 3142(f)(2) (permitting reopening of detention hearing "at any time before trial if the judicial officer finds that the information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community"). The Court finds, however, that the matter of B.H. inviting Defendant to come to Knoxville was raised at the detention hearing, and the dismissal of the stalking charge is not material because under 18 U.S.C. § 3142(g)(1), the Court must still consider the circumstances of the offense of conviction, which is possession of an unregistered silencer on February 13, 2024.

3

3:22-CR-91-KAC-DCP, 2022 WL 17640199, at *2 (E.D. Tenn. Dec. 13, 2022) (observing that the Bail Reform Act "provides no time restraint on filing an appeal from a detention order" and not addressing Local Rule 72.4(b)), *aff'd by* 2023 WL 4074630 (6th Cir. Apr. 24, 2023) (not reviewing the issue of timeliness). Even if untimely, however, the Court has discretion to consider an untimely appeal of a detention order. *United States v. Davis*, No. 2:19-CR-00196-1-JRG-CRW, 2020 WL 1977219, at *2 (E.D. Tenn. Apr. 24, 2020) (collecting cases on discretion to hear untimely appeal). More importantly, release or detention of a defendant pending sentencing is governed by 18 U.S.C. § 3143. Fed. R. Crim. P. 46(c).

"[A] defendant found or pleading guilty must be detained unless the district court finds by clear and convincing evidence that he is not a flight risk or a danger to the safety of the community."[3] *United States v. Veloz-Alonso*, 910 F.3d 266, 267 (6th Cir. 2018) (citing 18 U.S.C. § 3143(a)(1)). "Under 18 U.S.C. § 3143(a)(1), the Government is not required to make an initial showing of dangerousness; rather, the statute presumes dangerousness, and the criminal defendant must overcome this presumption." *United States v. Lay*, No. 2:23-cr-00130(4), 2024 WL 37976, *4 (S.D. Ohio Jan. 3, 2024); *see also United States v. Vance*, 851 F.3d 166, 168 (6th Cir. 1988). The defendant bears the burden of showing he or she is not a danger or flight risk. Fed. R. Crim. P. 46(c). "A defendant subject to detention under § 3143 may also be released if he satisfies the conditions of § 3143(a)(1) and clearly establishes 'exceptional reasons why [his] detention would not be appropriate.'" *United States v. Williams*, No. 20-1413, 2020 WL 4000854, *1 (6th Cir. July 15, 2020) (quoting 18 U.S.C. § 3145(c)).

---

[3] Section 3143(a)(1) excepts from detention defendants "for whom the applicable guideline promulgated pursuant to 28 U.S.C. § 994 does not recommend a term of imprisonment[.]" Here, the parties agree that Defendant is subject to a sentence of imprisonment, so the exception for defendants not facing a term of imprisonment does not apply.

4

Accordingly, the undersigned will apply § 3143(a) to determine whether Defendant has shown by clear and convincing evidence that he is not likely to flee or pose a danger to any person or the community if released on conditions pending his sentencing hearing. The Court will also examine whether Defendant has shown exceptional reasons for release.

## II. ANALYSIS

Defendant Hoffpowier argues that the detention order is based upon erroneous information because text conversations from Defendant's cellular telephone reveal that B.H. wanted Defendant to visit her Knoxville, Tennessee; to come to the medical facility where she worked for a medical procedure; and to "go dancing, and have sexual relations" [Doc. 54 pp. 1–2]. Defendant contends that he has served over half of his potential sentence and that release pending sentencing will allow him to secure his finances, divorce B.H., and resolve pending state charges before completion of his sentence [*Id*. at 2–3]. He asserts that release is necessary for him to make financial moves that will improve his financial position and avoid "financial ruin" while completing his prison sentence [*Id*. at 2]. Defendant maintains that finalizing his divorce from B.H. would allow him to gain access to assets that could improve his financial situation but that B.H is not cooperating with divorce proceedings [*Id*. at 2–3]. Defendant asserts that release also will allow him to resolve pending charges in Mansfield, Pennsylvania, thereby improving his opportunity to serve his sentence in this case in a camp or halfway house [*Id*. at 3]. If released, Defendant proposes that he live with his girlfriend in a residence they purchased in Mena, Arizona [*Id*. at 4]. He denies that he is a flight risk because he has no prior failures to appear, strong family support and work history, and would not "jeopardize his future by not appearing for his sentencing hearing [*Id*. at 3– 4].

5

The Government denies that Defendant's cellphone records contradict the Court's prior findings on detention [Doc. 59 p. 2]. It asserts that the records show that B.H. and Defendant "were communicating with each other in the months and weeks leading up to the offense" and that B.H. "invited Defendant to visit her in Knoxville, Tennessee, prior to February 8, 2024; however, after that date, text messages between [B.H.] and Defendant show that she changed her mind, she no longer wanted to be contacted, and she wanted to be left alone" [*Id*. at 2 & n.2]. The Government contends that B.H.'s rescinded invitation does not change the Court's prior findings that Defendant attempted to hide his identity to visit B.H. at her work, lied to officers about firearms in his vehicle, continued to track down B.H. despite her messages for him to cease contact, and had prior encounters with law enforcement when he visited B.H. in other states [*Id*. at 1–2; Doc. 22-1 pp. 1–3]. The Government also argues that Defendant's pending divorce and pending Pennsylvania charges are not grounds for release pending sentencing [Doc. 59 p. 3].

The Court examines the § 3142(g) factors and finds that even considering Defendant's arguments for release, he continues to be a danger to B.H. and the community. Moreover, Defendant does not present exceptional reasons for release.

**A. Flight Risk or Danger**

In analyzing whether conditions of release exist that would reasonably assure the appearance of Defendant at further proceedings and the safety of others and the community, the Court must evaluate the information presented by the parties considering the factors in 18 U.S.C. § 3142(g). These factors are (1) the nature and circumstances of the charged offense; (2) the weight of the evidence of Defendant's dangerousness, (3) Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C § 3142(g)(1)–(4); *see United States v. Stone*, 608 F.3d

6

939, 948 (6th Cir. 2010) (holding the second factor is the weight of the evidence of the defendant's dangerousness, not the defendant's guilt).

Defendant Hoffpowier proposes living with his girlfriend[4] at their new residence in Mena, Arizona [Doc. 54 p. 3].  He states that he currently has no criminal history points and no occasions of failure to appear in court [*Id.*].  He contends that "[t]he Pretrial Report notes a strong work history[,]" and the Court previously noted his "strong family support" [*Id.*].  The undersigned addresses the § 3142(g) factors relying upon the APSR; the Court's findings in its detention order [Docs. 22 & 22-1]; the evidence presented at the July 18, 2024 evidentiary hearing as summarized in the Court's Report and Recommendation [Doc. 41]; and the information provided in Defendant's motion [Doc. 54] and the Government's response [Doc. 59].

Regarding the first factor, which is the nature and circumstances of the offense, 18 U.S.C. § 3142(g)(1), the Court finds that Defendant entered a guilty plea to possession of an unregistered firearm, namely a silencer.[5]  Because this offense involves a firearm, this factor weighs in favor of continued detention.  Moreover, the circumstances of this offense are that Defendant had two firearms, one with an attached silencer, in his vehicle while he went to the parking area near B.H.'s workplace and subsequently attempted to meet her against her wishes.[6]  These circumstances indicate a high potential for danger, which supports continued detention.

---

[4]     The Court assumes that Defendant's girlfriend referenced in his motion is Ms. Trinity Young, who testified at the detention hearing that she and Defendant had been "dating" for approximately eight months.

[5]     In the plea agreement, the parties agree that the silencer constitutes a firearm for purposes of the charged offense [Doc. 52 pp. 1–2].

[6]     At the suppression hearing, Detective Kelley Talbot testified that B.H. reported that on the morning of February 13, 2024, Defendant parked near her workplace [Doc. 41 p. 8].  Dispatcher call notes from February 13, 2024, introduced at the suppression hearing reveal that an employee of the medical center where B.H. worked reported Defendant was in the parking lot or in an

7

The Court next considers the weight of the evidence against Defendant. 18 U.S.C. § 3142(g)(2). Our appellate court has instructed that "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. The Court continues to find the weight of the evidence of Defendant's dangerousness to be strong. Defendant has had encounters with B.H. in which the police were called in three states. Twice he came to her workplace uninvited. In February 2024, Defendant made an appointment at the medical center where B.H. works using a fake name, but she recognized it was him by the cellphone number given by the prospective patient, and her employer canceled the appointment. B.H. contacted the police because of this attempted appointment and applied for an order of protection against Defendant. Although Defendant contends that his cellphone history reveals that B.H. invited him to come to Knoxville and to get Botox at her workplace, Defendant's text messages and the evidence from the suppression hearing shows that B.H. rescinded this invitation and affirmatively told Defendant to stay away from her. Despite B.H.'s requests, Defendant parked near B.H.'s workplace on the morning of February 13, requiring her to enact the safety plan she had arranged with law enforcement and her coworkers. As discussed above, Defendant had two firearms and a silencer in his vehicle on February 13, 2024. Thus, the weight of the evidence of Defendant's dangerousness is great and supports detention.

The third factor relates to Defendant's history and characteristics to include his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal

---

adjacent parking lot [*Id*. at p. 22 n.5]. Officer Ryan Collins's body camera video from February 13, 2024, which was played at the suppression hearing, reveals that Defendant told the officer that he texted B.H. to arrange a meeting with her [*Id*. at 16]. Officer Collins testified that when he reviewed Defendant's recent text messages with Defendant, B.H. told Defendant to stay away from her and to go home [*Id*. at 17].

8

history and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Although Defendant has the support of his mother, who resides in Texas, and his girlfriend, who purportedly resides in Arizona, Defendant has no ties to the Eastern District of Tennessee. The APSR reveals that Defendant's mother and three adult children all reside in Texas, and, thus, his only ties to Arizona are his girlfriend, who recently moved there and the house he contends that he jointly purchased with her. Moreover, Defendant seeks to travel between multiple jurisdictions while on release to resolve charges in Pennsylvania, prosecute his divorce from B.H., and reside in Arizona. The APSR reveals that Defendant has a residence in Cleveland, Texas. This anticipated frequent travel and lack of ties to this district reveal Defendant to be a flight risk.

The Court also finds Defendant's criminal history and past conduct are at odds with his contention that he is not dangerous. As part of the factor (g)(3)(A) analysis, the Court considers Defendant's criminal history, including both actual convictions and mere arrests or charges, though the latter will typically weigh less heavily in favor of detention. *United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). Defendant currently has no criminal convictions but has pending charges in Pennsylvania for assault, criminal mischief, and an unknown drug offense, which Defendant proffered at the detention hearing relate to a bar fight [Doc. 22-1 p. 3]. Moreover, Defendant has older arrests for kidnapping and assault. Defendant's arrest history shows him to be a danger.

Finally, under § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The Court continues to find that "Defendant's danger to the community lies in his continued attempts to access his estranged wife and the dangerous way he does so" [Doc. 22-1 p. 3]. The information before the Court shows that Defendant has a pattern of seeking out his estranged wife, despite her

9

insistence that he stay away. Police have been called on three occasions, including for the events that precipitated the instant charges. At the suppression hearing, an officer testified that B.H. applied for an order of protection against Defendant after he made an appointment with her for a medical procedure using a false name [Doc. 41 p. 4]. Moreover, B.H. told the officer that Defendant assaulted her in Pennsylvania [*Id.*; Doc. 22-1 p. 2 (Government proffered that Defendant assaulted the victim when she returned to Pennsylvania to get her belongings from a friend's house)]. Defendant had two firearms and a silencer in his vehicle when he parked near B.H.'s workplace on February 13, 2024. Defendant now seeks release in part in order "to handle his divorce from [B.H.]" [Doc. 54 p. 2]. While according to Defendant's motion all contact with B.H. has been through his divorce attorney, Defendant contends that B.H.'s "unwillingness to cooperate with the divorce proceedings is preventing [him] from freeing up assets he could use in helping his current financial deficiencies" [*Id.* at 3]. The potential for conflicts arising out of divorce proceedings causes the Court concern about B.H.'s safety based upon the couple's history.

The information before the Court shows the Defendant is both a danger and a flight risk. The Court has considered the conditions proffered by the Defendant, which are that he be released to live with his girlfriend in Arizona. Based upon the above factors and Defendant's felony conviction for possession of an unregistered silencer, the Court continues to find that proffered conditions are insufficient to mitigate his danger to the community and particularly to B.H. Accordingly, the Court finds the proposed conditions would not reasonably assure the Court of the safety of the community or Defendant's appearance at sentencing. The Court finds that Defendant has failed to carry his burden of showing by clear and convincing evidence that he is not a flight risk or a danger.

## B. Exceptional Reasons Under § 3145(c)

The Defendant argues that the Court should release him to allow him to settle his financial and legal affairs before reporting to serve the remainder of his sentence [Doc. 54 pp. 2–3]. "A person . . . who meets the conditions of release set forth in section 3143(a)(1) . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).[7] The "exceptional reasons" provision of § 3145(c) does not apply to Defendant Hoffpowier because he does not meet the provision of § 3143(a)(1) that he show by clear and convincing evidence that he is not a danger. Moreover, even if Defendant could assure the Court that he is not a danger, he has not shown exceptional reasons warranting his release pending sentencing.

A defendant seeking release under § 3145(c) must show clear evidence of exceptional reasons why he or she should not be detained. 18 U.S.C. § 3145(c). What constitutes an "exceptional reason" for purposes of § 3145(c) is not defined in the statute. *United States v. Christman*, 712 F. Supp. 2d 651, 653 (E.D. Ky. 2010). However, "exceptional reasons" should set a defendant apart from other persons convicted of similar offenses. *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993). Moreover, "even exceptional reasons would not justify release if they are based on nothing more than probability, conjecture, intuition or speculation. Instead,

---

[7] This section expressly applies to defendant's whose detention is mandatory under § 3143(a)(2). Defendant Hoffpowier's conviction for violating 26 U.S.C. §§ 5861(d), 5871, and 5845 and 18 U.S.C. § 921(a)(3)(C) does not require mandatory detention. To the extent that release for exceptional reasons under § 3145(c) is limited to detention in cases falling within § 3143(a)(2), it does not apply here. *But see Williams*, 2020 WL 4000854, at *1 (applying the exceptional reasons analysis to a case within § 3143(a)(1)); *United States v. Dickerson*, No. CR419-072, 2020 WL 7234516, * (S.D. Ga. Sept. 9, 2020) (questioning whether "§ 3145(c) can *never* be applied to to detention pursuant to § 3143(a)(1)" but declining to "conjure a complicated statutory argument" when defendant did not raise § 3145(c)), *report & recommendation adopted by* 2020 WL 5904940 (S.D. Ga. Oct. 6, 2020).

11

according to the statute's explicit language, exceptional reasons must be 'clearly shown' to render a person's detention as inappropriate." *Christman*, 712 F. Supp. 2d at 694 (citing § 3145(c)).

Defendant seeks release to secure his financial situation, divorce B.H. (also to better secure his financial situation), and resolve pending state charges. These circumstances are not exceptional. "'[P]ersonal and familial hardship and disruption to an individual's educational or professional affairs are the natural, if unfortunate, consequences of finding oneself at the mercy of the criminal justice system.'" *United States v. Walden*, No. 3:10–CR–110–7, 2011 WL 4476641, *3 (E.D. Tenn. Sept. 26, 2011) (finding defendant's "separation from his children, his financial troubles, and his potential problems with obtaining financial aid for college" are not exceptional reasons for release under § 3145(c)) (quoting *United States v. Christman*, 712 F. Supp. 2d 651, 656 (E.D. Ky. 2010) (on remand)). Accordingly, Defendant has not shown clear evidence of an exceptional reason for release.

### III. CONCLUSION

In summary, the Court finds that Defendant Hoffpowier has failed to demonstrate that he is not a flight risk or a danger and has failed to show an exceptional reason why he should not remain detained pending his sentencing hearing. For the reasons stated herein, the undersigned

12

Case 3:24-cr-00016-TAV-DCP    Document 62    Filed 01/13/25    Page 12 of 13
PageID #: 389

**RECOMMENDS** that Defendant remain detained pending his sentencing hearing and that his Motion to A[]mend Order of Detention [Doc. 54] be denied.[8]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).